### GREAT ATLANTIC & PACIFIC TEA CO. v. McLRAVY.

#### No. 6434.

Circuit Court of Appeals, Sixth Circuit.

June 8, 1934.

R. M. Shivel, of Grand Rapids, Mich. (Linsey, Shivel & Phelps, of Grand Rapids, Mich., and Charles R. Fox, of Detroit, Mich., on the brief), for appellant.

G. B. Wheeler, of Grand Rapids, Mich. (Kim Sigler, of Hastings, Mich., and Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and HAHN, District Judge.

HICKS, Circuit Judge.

The Great Atlantic & Pacific Tea Company appealed from a judgment against it in favor of Matilda McLravy for damages for personal injuries.

Appellant operated a grocery store on the south side of State street in Hastings, Mich. Appellee, a customer, while leaving the store about 4 o'clock on the afternoon of February 2, 1929, slipped upon an accumulation of ice and snow and fell, causing the injuries for which she sued. Appellant questions the denial of a directed verdict upon two grounds:

(1) That there was no substantial evidence to establish negligence upon its part; and (2) that appellee was guilty of contributory negligence as a matter of law.

It is unquestionably the law that a storekeeper owes to his customers the duty of exercising reasonable care to keep his premises and access thereto in a safe condition for their use, and upon the evidence we do not think that appellant was entitled to a directed verdict upon either of the grounds urged.

There was no controversy over the arrangement of the store front. Access was had from the sidewalk to the door by means of a vestibule, having a maple floor 58 inches long by 62 inches wide at the front end, and extending from a concrete sill at the edge of the sidewalk to an oak sill under the door. The concrete sill was 15¾ inches wide and its top was 3¾ inches above the sidewalk. Pilasters rested upon each end of it. The bases of the pilasters were 16 inches square but the columns upon the bases were only 6 inches square. There were two show windows, one on each side of the entrance, each about 5 feet wide. The sides of the vestibule were of glass and formed portions of the show windows.

The testimony of Dunning, the manager, and Flory and Gardner, clerks, tended to show that appellee slipped on the sidewalk at a spot several feet from the building, though in front of it. If she slipped on the sidewalk there was, of course, no liability; but appellee testified that she slipped off the ledge (the concrete sill) and fell to the sidewalk. She was corroborated by Mrs. McNamara. This sill constituted a portion of the vestibule under the control of appellant and there was therefore a sharply disputed question of fact properly to be determined by the jury as to the exact point where the mishap occurred.

The evidence touching the condition of the vestibule, including the sill, at the time of the accident, was equally contradictory. The manager and clerks testified that there was no ice in the vestibule; that the clerks had cleaned it at 6:30 in the morning, and that one of them, Flory, had again swept it out about noon, and that the only snow or ice there in the afternoon were small patches which had been tracked in by customers. On the other hand, appellee testified that when she went into the store the vestibule was icy and slippery; that she stayed about fifteen minutes making purchases and that as she came out she slipped upon the ice, which was still there.

Mrs. McNamara, her companion, testified that the vestibule was icy both when they went in and came out; that she could see where snow had been tracked in upon it and had frozen; that she came out ahead of appellee and as she stepped off the sill she "kinda slipped"; that she turned around to tell appellee to be careful and saw her with her hand

up as though she were trying to catch to something; that she saw her fall and that her feet went from under her.

Mrs. Page testified that she saw appellee after she was brought into the store and that she observed that the vestibule was quite icy. Emma Wireman testified that the vestibule and step were icy.

Guy L. Haven, a witness for appellee, testified that he passed by the store about 2 o'clock; that he "observed that there was ice there clear up to the door practically"; that there was ice on the sidewalk, and that he observed it in the vestibule; that his attention was directed to it because a lady walking just in advance of him started to fall on the sidewalk and he caught her in time to save her from going into the plate glass; that he passed the store a second time about 4 o'clock, shortly after appellee had been taken away, and that he again observed that the sidewalk and vestibule were very slippery and that drippings from the cornice had fallen on the sidewalk and had sprayed both ways, that is, both toward the building and away from it.

This evidence above recited was substantial and we think sufficient to sustain a finding that at the time of the accident the vestibule, including the concrete sill, was unsafe as a passageway.

■ Appellant contends that there was no evidence (1) that its agents knew the dangerous condition of the vestibule; or (2) of any circumstance that would charge it with such knowledge.

Passing over the first point and coming directly to the second, appellant was charged with knowledge of that which in the exercise of reasonable care it might have ascertained. "Reasonable care" is relative. It varies in degree as applied to different situations. The law requires a merchant to devote more attention to the safety of the entranceway to his store through which his customers are expected and invited to come than to those portions not open to the public. He must exercise proper diligence to keep the entranceway reasonably safe, and he cannot disregard the duty of inspection nor the duty

of applying necessary corrective measures at reasonable intervals. We think that it was properly left to the jury to determine whether appellant discharged this obligation.

There was slush in the vestibule about noon, and Flory swept it out. There was no further cleaning prior to the accident. The clerks applied salt to the sidewalk in the early morning, but none was applied to the vestibule at any time. Four inches of snow fell on January 31st and lay on the ground on the day of the accident. On that day the maximum temperature was 23 degrees and the minimum 5 degrees below zero. The accident happened on a busy Saturday afternoon. As many as eleven or twelve hundred people entered the store that day. They were continually going and coming. There was evidence that the streets and sidewalks were covered with ice and snow, and it is common knowledge that quantities thereof would accumulate upon the footgear of customers and be tracked into the vestibule.

We think the evidence supports the conclusion that appellant's agents should have foreseen the dangerous condition of the entrance at the time of the accident; that sweeping the vestibule at noon, four hours before, was not a sufficient precaution.

■ As to contributory negligence: Appellee admits that she knew the icy condition of the vestibule but she had walked over the slippery streets from her home, a distance of two blocks, without injury. As she came out of the store she naturally thought that her rubber overshoes would to some extent serve as a safeguard. She testified that she walked carefully and that just before she slipped she put her hand upon one of the posts (evidently meaning one of the pilasters) to protect herself. Numerous other people were coming and going in safety. Her alternatives were to call for assistance or to wait until the vestibule was cleaned or to pass out through a rear door into an alley, which was not shown to be a safer way. We cannot say as a matter of law that she should have taken any other course than the one adopted.

The judgment of the District Court is affirmed.