MARGARET S. POWELL v. DEIFELLS, INCORPORATED.

(Filed 14 January, 1960.)

**1. Negligence § 37b—**

Store owners are not insurers of the safety of customers on their premises.

**2. Negligence § 37f—**

The doctrine of *res ipsa loquitur* does not apply to a fall of a customer in the aisle of a store.

**3. Negligence § 37b—**

The proprietor of a store is under duty to exercise ordinary care to keep the aisles and passageways intended for use by customers in a reasonably safe condition so as not unnecessarily to expose a customer to danger, and to give warning of unsafe conditions, of which the proprietor knows or in the exercise of reasonable supervision and inspection, should know.

**4. Same—**

Where an unsafe condition is created by third parties or an independent agency, it must be shown that such condition had existed for such a length of time that the proprietor knew, or by the exercise of reasonable care should have known, of its existence in time to have removed the danger or to have given proper warning of its presence in order for the proprietor to be liable to a customer injured by such condition.

**5. Negligence § 37f— Evidence of negligence of store proprietor resulting in fall of customer on aisle held sufficient for jury.**

Evidence tending to show that the floor of defendant's store was of asphalt tile, impervious to water and slippery when wet, that on the day in question rain mixed with snow had been falling, that an unusually large number of customers was present, that water had been tracked into the store and along the aisles, that defendant proprietor usually mopped the floor and put out mats at the door on rainy days, and that plaintiff customer, entering the store some hours after it had opened, slipped and fell to her injury in an aisle at a place where there was water, the aisle being wet all the way to the door some twenty feet away, *is held* sufficient to be submitted to the jury on the issue of negligence.

**6. Trial § 22a—**

On motion to nonsuit the evidence must be taken in the light most favorable to plaintiff and he is entitled to every reasonable inference to be drawn therefrom.

**7. Appeal and Error § 51—**

On appeal from judgment of nonsuit, evidence erroneously excluded is to be considered with other evidence offered by plaintiff

**8. Evidence § 16—**

When it is material to the issue whether the aisle of a store was wet or dry at the time of the accident, testimony of a witness as to the condition of the floor some fifteen to twenty minutes after the accident is competent in the absence of a showing of change of condition during the interval.

**9. Evidence § 36—**

Testimony of a witness to the effect that the condition of the floor of a store was wet is competent when it is obvious that the response was instantaneous and a shorthand statement of fact.

**10. Negligence §§ 26, 37g—**

Where reasonable minds might arrive at conflicting conclusions as to whether plaintiff was guilty of contributory negligence under the circumstances adduced by the evidence nonsuit for contributory negligence is properly denied.

APPEAL by plaintiff from *Crissman, J.,* January 19, 1959 Civil Term, of GUILFORD, Greensboro Division.

This action was instituted 4 September 1957 to recover for personal injuries allegedly caused by negligence of defendant.

Plaintiff complains that she was injured when she slipped and fell in defendant's store while making purchases and her injuries were proximately caused by negligence of defendant in that the store was dimly lighted, water had been allowed to accumulate on the aisle floors from the shoes, clothing and paraphernalia of customers on account of the rainy condition of the weather, the floors were of tile asphalt and slippery when wet, customary precautions had not been taken to make the floors safe and no warning of the dangerous condition was given.

Defendant denies all allegations of negligence and pleads contributory negligence.

Following is a summary of plaintiff's evidence:

On Friday morning, 9 December 1955 about 10:30 A. M. plaintiff, a married woman 56 years of age, drove from her home in Greensboro to Summit Shopping Center, where defendant's retail department store was located, purchased merchandise at another store, did some window shopping and entered defendant's store about 11:15.

It had been raining all the morning and at times the rain was mixed

with snow. At the time plaintiff entered defendant's store it was raining and there were flurries of snow. Plaintiff had no umbrella, was wearing a hat and winter suit but no raincoat or outer coat.

The sidewalk in front of the store is ten feet wide and covered with a canopy. There are two entrances to the store and they had no storm doors. The entrances are on the same level with the sidewalk.

Plaintiff entered the right-hand door and proceeded down the main aisle on the right side of the store, inspecting merchandise, until she came to the point where a cross aisle intersects the main aisle. She waited until the clerk had finished with another customer and then made a purchase. She spied some goods across the main aisle she desired to purchase.

Plaintiff's version of what next occurred is as follows: "I turned and started to walk across to the other counter and when I did my feet just slid completely out from under me and I fell . . . hit on my right side . . . As I fell I heard my hip break . . . there was water all around where I was, and under me, as well as far as I could see toward the door down the entrance aisle. . . . I was about 20 to 25 feet from the entrance door when I fell. There was water on the floor where my foot had slid through it. As to the condition of my suit where I fell, my suit was wet about the shoulder and sleeve and that part of my jacket that came down over my hips and my skirt all the way to the hem especially on my right side. Both of my shoes were wet, but the right shoe was wetter because I had gone more on my right than on the other side . . . the right shoe was slick and shined and the heel was pulled out of line. My shoe was not in this condition when I fell." As to the amount of water she noticed after she had fallen, she said: "Well, just like the water would be when anybody came in out of the rain or snow and walked . . . water tracks." Plaintiff was not warned that the floor was wet and slippery.

Plaintiff's shoes were suede with 1¼ to 1½ inch cuban heels. There were leather taps 1 square inch in surface on the heels. They were not slick.

Juanita Collins, a clerk who had come to work at 9:00 and had seen the accident, testified: "There had been several customers in the store that morning . . . it was raining out, and as customers came there would be some water on their feet." She stated it was the custom on rainy days to mop the floor, but the floors had not been mopped on this day. She also stated: "there would have had to been a wet condition." Upon objection, the court excluded the last statement.

Plaintiff testified that the ambulance came within 15 to 20 minutes after her fall. Ralph Hutton, who was in charge of the ambulance, testified he arrived about 11:45 A. M., 5 or 6 minutes after he re-

ceived the call. In speaking of the aisle in which plaintiff fell, he stated: "The floor was very badly tracked and there was water on the floor. I saw tracks on the floor." Upon objection, the court excluded all of Hutton's testimony relating to the condition of the floor.

Plaintiff had never shopped in this store before. It was decorated for Christmas. The lights were not bright, but were sufficient to see how to walk. Plaintiff was not looking at the floor but was looking at merchandise.

There were other customers in the store at the time. Friday was one of the busiest days of the week and business was about double during the Christmas shopping season.

One of the clerks and the store manager, on adverse examination, testified that the floor was slippery when wet and that defendant customarily put mats at the door on rainy days and mopped with a dry mop if any water accumulated on the floors, but on the day in question the mats were not placed at the door and the floor was not mopped.

The floors were of 9-inch squares of asphalt tile. The color was marbleized gray. Asphalt tile is standard flooring for stores but is slippery when wet. It is impervious to water.

When plaintiff closed defendant demurred to the evidence. The court sustained the demurrer.

From judgment of involuntary nonsuit plaintiff appealed and assigned error.

*McLendon, Brim, Holderness & Brooks and Hubert Humphrey for plaintiff, appellant.*

*Jordan, Wright, Henson & Nichols and William D. Caffrey for defendant, appellee.*

MOORE, J. The decisive question on this appeal is whether or not the court erred in granting the motion for nonsuit.

Store owners are not insurers of the safety of customers on their premises. *Copeland v. Phthisic*, 245 N.C. 580, 582, 96 S.E. 2d 697. And where a customer slips and falls in the aisle of a store the doctrine of *res ipsa loquitur* has no application. *Pratt v. Tea Co.*, 218 N.C. 732, 733, 12 S.E. 2d 242. But "those entering a store during business hours to purchase or look at goods do so at the implied invitation of the proprietor, upon whom the law imposes the duty of exercising ordinary care (1) to keep the aisles and passageways where customers are expected to go in a reasonably safe condition, so as not unnecessarily to expose the customer to danger and (2) to give warning of . . . unsafe conditions of which the proprietor knows or in the exer-

cise of reasonable supervision and inspection should know." *Lee v. Green & Co.*, 236 N.C. 83, 85, 72 S.E. 2d 33. But when an unsafe condition is created by third parties or an independent agency it must be shown that it had existed for such a length of time that defendant knew or by the exercise of reasonable care should have known of its existence, in time to have removed the danger or given proper warning of its presence. *Hughes v. Enterprises*, 245 N.C. 131, 134, 95 S.E. 2d 577; *Brown v. Montgomery Ward & Co.*, 217 N.C. 368, 371, 8 S. E. 2d 199.

It is our opinion, and we so hold, in the instant case that plaintiff's evidence makes out a *prima facie* case of actionable negligence. The floor was of asphalt tile, a substance impervious to water and slippery when wet. The manager of the store knew this. Because the floor was slippery when wet it was customary to put mats at the entrances and mop the floor with dry mops on rainy days. On the day plaintiff fell, it had rained all the morning and at times the rain was mixed with snow, facts of which defendant is in no position to deny knowledge. But on this day defendant neglected to mop the floor. The store had been open from two to three hours when plaintiff arrived. Customers had tracked in water. The floor was in a wet condition. When plaintiff fell there was water all around her and it extended back to the entrance. This condition was observed by the man in charge of the ambulance when he arrived. There is a reasonable inference that the water had begun to accumulate on the floor from the time the store opened for business. Indeed, this is borne out by the testimony of the clerk, Miss Collins. Defendant gave plaintiff no warning of the danger and took no steps to remove it. As to whether defendant's conduct under the circumstances constituted actionable negligence is a question for the twelve.

*Flora v. Tea Co.* (Pa. 1938), 198 A. 663, is quite similar. Plaintiff slipped and fell on a smooth linoleum floor where water and slush had been brought in on the shoes of customers. At two-hour intervals the floor was mopped and sawdust placed thereon. Plaintiff slipped at a place from which the sawdust had been swept about 55 minutes earlier but had not been replaced. In discussing the situation there presented the Court said: ". . . (W)e hold that it is not placing an unreasonable burden upon the owner of a store to take greater safeguards than were taken in this case to protect customers against falls . . . The floor of the store was covered with smooth linoleum which had, as one witness described it, 'a slippery disposition.' . . . It was shown that it was defendant's practice in bad weather to strew either an anti-slip compound or sawdust on the floor, to prevent slipping. This indicates that defendant was aware of a floor condition which might cause

injury to its customers. That this condition could have been obviated by comparatively inexpensive attention is too clear to require argument. . . . Slipping on wet linoleum is of such frequent occurrence that those who have linoleum on the floors of their stores, and who permit it to become and remain wet, cannot successfully plead that such a fall as the minor plaintiff sustained was not foreseeable."

Another case in point is *Lyle v. Megerle* (Ky. 1937), 109 S.W. 2d 599. Plaintiff slipped on melted snow and slush which had accumulated on the tile floor of a butcher shop. The court sustained defendant's motion for a peremptory instruction. In reversing the ruling below, the appellate Court said: "The snow had been melting throughout the day and many people were on the streets. The store had been open since 7:30 o'clock in the morning and the slush had been tracked in by customers. It was muddy and sooty. The accumulation on the tile floor was very slick. . . . The case is different from that line of cases where some object causing an injury to a customer had fallen or been placed upon the floor by a third person and had remained there momentarily or for so brief a time that the proprietor was not required to take notice of its presence, or he had had no opportunity to remove or guard against it. It is distinguishable also from the cases relied upon by the appellee where persons were injured through slipping on ice or slush on outside steps, or in entrance ways outside the storeroom, . . . The smooth surface and impervious quality of tile makes the accumulation of such substance as described in this case a situation from which such an accident should well have been anticipated. It would be an extreme view to take that reasonable men could not have foreseen the possibility of a customer slipping on slushy snow on a smooth tile floor."

The holding in *Flora* and *Lyle, supra,* is the majority view. Cases factually and legally comparable are: *Taylor v. Power Co.* (Minn. 1935), 264 N.W. 139; *Laskey v. Stores, Inc.* (Mass. 1945), 59 N.E. 2d 259; *Yeager v. Chapman* (Minn. 1951), 45 N.W. 2d 776, 22 A.L.R. 2d 1260; *Clark v. Lansburgh & Bro.* (DC D of C. 1941), 38 F. Supp. 729; *Tea Co. v. McLravy* (CC6C 1934), 71 F. 2d 396. For full discussion, annotations and exhaustive citations of authority see 62 A. L.R. 2d 6-124.

The case of *Robinson v. S. H. Kress & Co.* (EDNC 1956), 137 F. Supp. 19, is distinguishable. This is a North Carolina case. Plaintiff slipped and fell on a wet terrazzo floor under circumstances somewhat similar to the case *sub judice*. The court held that there was insufficient evidence of notice to the defendant. But the court was acting both as judge and jury and conceded that there was probably a jury question involved.

As has been often declared by this Court, on a motion to nonsuit the evidence is to be taken in the light most favorable to the plaintiff and he is entitled to every reasonable inference to be drawn therefrom. *Williamson v. Bennett,* 251 N.C. 498, 112 S.E. 2d 48; *Manufacturing Co. v. Gable,* 246 N.C. 1, 4, 97 S.E. 2d 672. And on such motion evidence erroneously excluded is to be considered with other evidence offered by plaintiff. *Pinnix v. Griffin,* 219 N.C. 35, 38, 12 S.E. 2d 667.

The testimony of the witness Hutton relative to the condition of the floor 15 to 20 minutes after the accident was competent and should not have been excluded. It was corroborative of plaintiff's testimony and in light of the circumstances was admissible as substantive evidence. The weight was for the jury. It had been raining all morning, customers had been coming in and going out, the floor had not been mopped, only a short time had intervened between the accident and Hutton's arrival and there was no evidence of an increased use of the aisle by customers after plaintiff's fall. "Whether the existence of a particular state of affairs at one time is admissible as evidence of the same state of affairs at another time, depends altogether on the nature of subject matter, the length of time intervening, and the extent of the showing, if any, on the question of whether or not the condition had changed in the meantime. The question is one of materiality or remoteness of the evidence in the particular case." North Carolina Evidence: Stansbury, sec. 90, p. 170; *Gaffney v. Phelps,* 207 N.C. 553, 559, 178 S.E. 231; *Blevins v. Cotton Mills,* 150 N.C. 493, 498, 64 S. E. 428.

The statement of the witness Collins that "there would have had to been a wet condition" was probably excluded on the ground that it was an opinion or conclusion of the witness. The statement of the witness was in response to an inquiry as to the condition of the floor prior to plaintiff's fall. Counsel for defendant had repeatedly objected to questions of this purport, there was considerable confusion, and the reason for excluding this line of evidence is not at all clear. Testimony bearing upon the presence or absence of water on the floor in the main aisle both before and after plaintiff's arrival was not only material but related to an essential element of plaintiff's case. Witness had already testified that customers had tracked in water. The floor had not been mopped. When witness was finally permitted to whisper an answer to the court reporter she made the response above quoted. It is obvious that the response was instantaneous and "a shorthand statement of fact" to emphasize that the floor was wet. "The instantaneous conclusions of the mind as to the appearance condition, or mental or physical state of per-

sons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking, matters of fact, and are admissible in evidence . . ." *Watson v. Durham*, 207 N.C. 624, 625, 178 S.E. 218, quoting from *Bane v. R. R.*, 171 N.C. 328, 88 S.E. 477. See also *State v. Harris*, 209 N.C. 579, 580, 183 S.E. 740; *Street v. Coal Co.*, 196 N.C. 178, 183, 145 S.E. 11; *Kepley v. Kirk*, 191 N.C. 690, 694, 132 S.E. 788; North Carolina Evidence; Stansbury, secs. 125 and 126, pp. 233-243.

The excluded evidence referred to in the two preceding paragraphs was given consideration on the question of nonsuit.

Defendant contends that the ruling of the court below should be sustained on the ground, if on no other, that plaintiff was contributorily negligent as a matter of law. We refrain from factual discussion in this connection. Suffice it to say that this is a matter upon which reasonable minds might arrive at conflicting conclusions. It is a matter to be resolved by the jury. *Waters v. Harris*, 250 N.C. 701, 707, 110, S.E. 2d 283; *Lyle v. Megerle, supra; Clark v. Lansburg & Bro., supra; Yeager v. Chapman, supra; Tea Co. v. McLravy, supra.*

The judgment below is

Reversed.