ETHEL LEE RIVES v. GREAT ATLANTIC AND PACIFIC TEA COMPANY

No. 8310SC113

(Filed 5 June 1984)

**Negligence § 57.5— slipping on grapes on grocery store floor—sufficiency of evidence of failure to maintain premises in safe condition**

> In an action in which plaintiff sought to recover damages for injuries sustained by her when she slipped and fell on some loose grapes on the floor of defendant's grocery store, the trial court erred in directing a verdict for defendant where the evidence tended to show that the grapes on which plaintiff slipped came from an open box in a shopping cart in the middle of the floor rather than from the produce counter; it was the busiest day of the week for the store in the beginning of its rush hour; therefore, it was foreseeable that numerous people might handle the grapes in the cart; the produce manager was aware that customers rummage through produce looking for the freshest items; he knew at least one customer would be handling the grapes that were in the shopping cart which he had rolled into the middle of the floor; and given such circumstances, a reasonable man would have foreseen that there was a substantial risk that customers would accidentally drop some grapes on the floor around the shopping cart and that someone might slip on them. It was also foreseeable that the risk of an accident was greater than usual because of the number of people expected to be in the store at the time, and because the shopping cart was placed in the middle of the produce aisle where customers would not expect to find dropped produce on the floor.

APPEAL by plaintiff from *Farmer, Judge*. Judgment entered 22 September 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 11 January 1984.

Plaintiff seeks to recover damages for injury sustained by her when she slipped and fell on some loose grapes on the floor of defendant's grocery store. At the close of the plaintiff's evidence, the court granted the defendant's motion for a directed verdict. Plaintiff appealed.

The evidence viewed in the light most favorable to the plaintiff shows the following: On the morning of 6 October 1979, a

Saturday, defendant's produce manager, Mr. Franks, and an employee were in the stockroom of defendant's store when a customer came to the door and asked if the store had any grapes fresher than those out on the display counter. Although the store was having a special on grapes that day, Mr. Franks had not yet restocked the grape display. Mr. Franks placed some boxes of fresh grapes in a shopping cart to be brought out for the customers. One box was wedged into the child's seat of the cart and was slightly tilted. The top was removed from this box so that the customer could get to the grapes. Mr. Franks placed this shopping cart in the middle of the produce aisle and left it there.

Around 10:00 a.m. that day, plaintiff was shopping near the produce aisle when she left her cart for a moment and walked over to the grape display. She examined the grapes, turned, and started to return to her cart. When she was six or seven feet away from the produce aisle and close to the shopping cart with the grapes in it, she slipped and fell on several loose grapes. Plaintiff had been watching where she was going just before she fell but did not recall looking down at the floor and did not see the grapes. The produce aisle was clean and well lit. After she fell, plaintiff observed grapes on the bottom of her shoe and a smear on the floor where she had slipped. The grapes were pale green and about the size of marbles. The floor tile in the store was a light color with green and a little mingled brown in it. Plaintiff did not know how the grapes got on the floor. As a result of her fall, plaintiff fractured the fifth metatarsal in her left foot. After plaintiff fell, the store manager came over to help her. Plaintiff testified that the manager wheeled the cart with the grapes in it around, said "I've told them and told them not to bring these things out here until they're ready to be put up," and then pushed the cart back to the stockroom. It is not clear from the evidence how long the cart with the grapes had been in the aisle before plaintiff fell.

Mr. Franks testified that, after the accident, he pushed the shopping cart containing the grapes back to the stockroom because he was afraid someone else might fall. He could not remember if the store manager told him to do this. He assumed that the grapes on which plaintiff slipped were dropped on the floor by the customer who had asked for some fresher grapes. He was aware of the potential hazards of grapes and other produce

falling on the floor and was trained to keep an eye on the floor. He knew that customers generally rummage through the produce to find the freshest items, which can cause produce to fall on the floor. He said the employees in the produce department constantly watch the floor for loose material, sweeping and cleaning it three or four times a day. Defendant has a procedure manual for the produce department which has a section on grapes, which says that employees should prevent serious accidents by keeping a constant vigil for grapes that have fallen on the floor and by using astroturf mats. Mr. Franks had never been told to put astroturf mats under the grape display.

The evidence further tends to show that Saturday is traditionally the busiest day of the week at defendant's grocery store and that the rush hour usually begins around 10:00 a.m. The store manager agreed that grapes easily fall off their stem and that customers are somewhat clumsy in handling them. He admitted that several falls had occurred in his store in 1979 prior to plaintiff's accident.

*Michaels and Jernigan, by Leonard T. Jernigan, Jr., for plaintiff appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner and Hartzog, by Ronald C. Dilthey, for defendant appellee.*

WEBB, Judge.

We believe the trial court erred in directing a verdict for the defendant. It is well established that the owner or proprietor of a business is not an insurer of the safety of his customers, however, the proprietor has the duty to exercise ordinary care to keep the aisles and passageways of his store, where customers are expected to go, in a reasonably safe condition so as not to expose customers unnecessarily to danger, and to give warning of hidden dangers and unsafe conditions of which he knows or, in the exercise of reasonable supervision and inspection, should know. *See Long v. Food Stores,* 262 N.C. 57, 136 S.E. 2d 275 (1964); *Powell v. Deifells, Inc.,* 251 N.C. 596, 112 S.E. 2d 56 (1960); *Lee v. Green and Co.,* 236 N.C. 83, 72 S.E. 2d 33 (1952). A proprietor is charged with knowledge of an unsafe condition on his premises created by his own negligence, or the negligence of his employee acting within

the scope of his employment, or of an unsafe condition of which his employee has notice. *Long, supra,* at 60, 136 S.E. 2d at 278.

Plaintiff contends defendant's employee, Mr. Franks, negligently created an unsafe and hazardous condition when he left the shopping cart containing the tilted, open box of grapes in the middle of the produce aisle unattended and failed to promptly inspect the area for fallen grapes and remove the cart from the produce aisle after the customer had selected her grapes. The evidence tends to show that the grapes on which plaintiff slipped came from the open box in the shopping cart rather than from the produce counter. Most likely, the grapes were dropped on the floor by a customer though it is conceivable that the grapes fell out of the box as Mr. Franks pushed the cart down the aisle or when he stopped the cart. Either way, the jury could reasonably infer that Mr. Franks' action in putting the cart in such a position caused the ultimate hazard of grapes on the floor and thus proximately caused plaintiff's accident.

Mr. Franks was aware that customers rummage through produce looking for the freshest items, which can cause produce to fall on the floor, and he knew that produce on the floor can cause serious accidents. He knew at least one customer, the customer requesting the freshest grapes, would be handling the grapes that were in the shopping cart, and should have realized that other people were likely to handle the grapes also because the store was having a special on grapes that day, and the grapes on the display counter were not as fresh as those in the shopping cart. It was the busiest day of the week for the store and the beginning of its rush hour; therefore, it was foreseeable that numerous people might handle the grapes.

Given such circumstances, we believe a reasonable man would have foreseen that there was a substantial risk that customers would accidentally drop some grapes on the floor around the shopping cart and that someone might slip on them. It was also foreseeable that the risk of an accident was greater than usual because of the number of people expected to be in the store at the time, and because the shopping cart was placed in the middle of the produce aisle where customers would not expect to find dropped produce on the floor. Nevertheless, Mr. Franks left the shopping cart in the aisle unattended and did not return to in-

spect the area after the customer had selected her grapes to see if any grapes had been dropped on the floor. He did not place astroturf mats around the cart to reduce the risk of an accident as instructed by the procedure manual, nor did he take any other precautionary measure to protect the customers from the potential hazard. In addition, one could reasonably infer from the manager's comment, "I've told them and told them not to bring these things out here until they're ready to be put up," that it was not a safe practice to leave a cart containing produce in the middle of the aisle as was done here, and that the employees were aware of this. We believe the jury could reasonably infer from the evidence that defendant failed to maintain the aisles of its store in a reasonably safe condition; therefore, the question of defendant's negligence should have been submitted to the jury.

Moreover, this is not a case where the defendant is entitled to a directed verdict based on the plaintiff's contributory negligence. The basic issue with respect to contributory negligence is whether the evidence shows, as a matter of law, that the plaintiff failed to keep a proper lookout for her own safety.

"When a defendant moves for a directed verdict on the grounds that the evidence establishes plaintiff's contributory negligence as a matter of law the question before the trial court is whether 'the evidence taken in the light most favorable to plaintiff establishes her negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom. Contradictions or discrepancies in the evidence even when arising from plaintiff's evidence must be resolved by the jury rather than the trial judge.' (Citations omitted.)"

*Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 468-69, 279 S.E. 2d 559, 563 (1981).

Here, plaintiff said she was looking where she was going, that the grapes were pale green and very small, and that the color of the floor tile was a light color with some green in it. The evidence shows the grapes were located near the shopping cart in the middle of the aisle where customers are less likely to expect to find loose produce on the floor. We do not believe this evidence allows no reasonable inference except plaintiff's negligence: that a

reasonably prudent and careful person exercising due care for his or her safety would have looked down and seen the grapes on the floor, as is required to support a directed verdict for defendant on this issue. *See Norwood, supra,* at 469, 279 S.E. 2d at 563.

We hold that plaintiff presented sufficient evidence to submit the issues of defendant's negligence and her contributory negligence to the jury, and that the entry of a directed verdict for defendant was improper. The judgment of the trial court is

Reversed.

Judges WELLS and WHICHARD concur.