The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to receive further evidence or to rehear the parties or their representatives; therefore, the Full Commission affirms the Decision and Order of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction over the parties and over the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties have stipulated to the following facts:
a. Plaintiff has complied with all procedural requirements of the Tort Claims Act in filing her claim.
b. On 29 September 1995, plaintiff paid to attend a conference on "memory at the Friday Center of the University of North Carolina at Chapel Hill (hereinafter "Friday Center) and was on the grounds of the Friday Center for the purpose of attending the conference at the time of her injury.
c. Plaintiff was injured on 29 September 1995, when she stepped into a hole in the front lawn area of the Friday Center. The hole into which plaintiff stepped was an uncovered sprinkler valve pit. The cover for the valve pit was not securely in place covering the hole at the time of the accident. The valve pit cover is approximately ten inches by fifteen inches in size.
d. No report of an open sprinkler system was received by those persons in charge of operations at the Friday Center on 29 September 1995, prior to plaintiffs accident.
4. The parties stipulated into evidence without need for further authentication or verification the following:
a. Plaintiffs Exhibits 1 through 3: photographs;
b. Plaintiffs Exhibit 4a: video depositions of Pearl McHaney and Thomas McHaney;
c. Plaintiffs Exhibit 4b: written depositions of Pearl McHaney and Thomas McHaney; and
d. Stipulation concerning testimony of Victoria Tackett on medical bills and expenses.
***********
 RULING
On 26 July 1998, plaintiff filed a Motion to Reopen the Record to permit the filing of an Amended Affidavit of Victoria Tackett to add the names of Ruth Lawson and Kirk Pelland as additional state employees whose alleged negligence was responsible for plaintiffs injuries. The Deputy Commissioner allowed the motion, and this ruling shall stand.
***********
Based upon the competent, credible, and convincing evidence adduced at the hearing before the Deputy Commissioner, the Full Commissioner enters the following:
 FINDINGS OF FACT
1. The Friday Center is a conference center owned and operated by defendant, and is a facility where conferences are routinely held and which is routinely visited by the public.
2. On the evening of Friday, 29 September 1995, the Friday Center was scheduled to host a conference on "Southern Memory. Plaintiff arrived at the Friday Center at approximately 6:00 p.m., about 30 minutes before the conference was scheduled to begin. There are several pedestrian walkways which connect to the visitor parking lot and lead to the entrance of the building. The design of the Friday Center and parking spaces is such that there are parking spaces immediately adjacent to the front lawn area. Plaintiff parked her car in one of the first row spaces. There are no sidewalks along the parking lot itself, so that those who park in spaces adjacent to the lawn must either walk across the lawn or walk in the traffic lanes of the parking lot in order to reach the sidewalks. The shorter and generally safer route is to walk across the lawn to the sidewalks. Plaintiff chose to walk across the lawn, and saw others doing the same.
3. As plaintiff walked across the lawn, she saw no indication that there was a hole in the lawn. The hole was completely obscured by uneven ground and long grass which grew over the edge of the hole and hung down into it. Prior to stepping into the hole, plaintiff saw the valve pit cover lying on the ground approximately three feet from the hole. She assumed the cover was in place and covering a hole. She stepped into the uncovered sprinkler valve pit, which was approximately one foot deep, and fell.
4. Immediately following the fall, plaintiff experienced pain in her right arm. Upon obtaining medical treatment, she learned that she had broken her right elbow in the fall.
5. There were two eyewitnesses to the accident, Thomas McHaney, Ph.D., and Pearl McHaney, Ph.D. They had arrived at the conference early, and decided to eat a picnic lunch on the front lawn area. While eating, they saw people beginning to arrive for the conference. A number of these visitors walked across the lawn to reach the sidewalks leading to the center. Plaintiff walked past them at a normal pace. As she walked past, they saw her leg disappear into the ground and saw plaintiff fall to the ground with great force.
6. The McHaneys went to assist plaintiff and then marked the hole with a bag. Both witnesses described the hole as being virtually invisible in the tall grass. Photographs taken on 1 October 1995, about 48 hours after the accident show that the grass in the area of the hole was tall and almost entirely obscured the hole from view. The grass growing over the edge and down into the hole makes it appear as though the hole had been uncovered for some time.
7. In 1995, the University contracted with Turf Services, Inc., to replace a portion of the irrigation system at the Friday Center, including the portion that services the front lawn areas. Work on the system was performed during the summer of 1995, and work under the contract was completed by the contractor in August 1995. Prior to final payment to the contractor, the new irrigation system was inspected by Kirk Pelland, an employee of the University. Mr. Pelland was the University Forester, and as part of his duties, he supervised the installation and operation of irrigation systems at the University. The system is operated electronically by automatic timing controls, which are buried within the valve boxes. During ordinary operation of the system, there is no need to enter the valve boxes. Further, once the valve cover is properly in place over the box, the cover is securely locked in place and cannot be removed accidentally, but requires a tool which is inserted into a small hole to disengage the locking mechanism.
8. The Universitys job summary report indicates that the final payment for the irrigation system was made on 19 September 1995, ten days prior to plaintiffs accident. By the time of payment, the University had done a final inspection of the system and had approved and accepted the work of the contractor.
9. Mr. Pelland was the only person at the University who would call the contractor back to do the warranty work after acceptance of the job. Mr. Pelland stated that there is no record of the contractor being called back to work on the system in September 1995, and he does not remember any warranty work being done on the system by Turf Services in September once the job was completed.
10. After the irrigation system was accepted by the University, the University maintenance crew supervised by Mr. Pelland were the only University employees who maintained the system. Mr. Pelland testified that on the day of plaintiffs accident, the contractor would not have been working on the system because final payment had already been made.
11. On 29 September 1995, James Trapp was employed by the University as a housekeeping team leader at the Friday Center. He was at the center from 6:30 a.m. to 3:30 p.m. During the day he saw men using some machinery and working on the irrigation system in the front lawn area of the Friday Center. The workers were driving a pickup truck and a van with the name "Toro on the side. Mr. Pelland later testified that Mr. Trapps description of the van comported with the vans used by Turf Services. Mr. Trapp returned to the Friday Center that night and was informed of plaintiffs fall. Mr. Trapp and a security guard found the hole and noted that the cover was not on. They subsequently placed orange traffic cones around the hole to warn of the danger.
12. Ruthie Mae Lawson, manager of operations of the Friday Center, arrived at work at seven-thirty on 29 September 1995. During the day she noted the presence of a white van with a name something like "Green Turf on the side surrounded by a logo of grass. She recognized the van as belonging to the contractor who had been working on the irrigation system.
13. It was the policy and habit of the Friday Centers grounds maintenance crew leader, Leo Watford, to inspect the lawn of the Friday Center for litter and debris every morning when he arrived at work. The grounds crew leader had no duty to operate or maintain the irrigation system. On 29 September 1995, Mr. Watford inspected the grounds and did not see any valve covers out of place. At approximately 1:20 p.m., Mr. Watford again walked the area, including where plaintiff later fell, but again did not see any valve covers removed. Mr. Watford believes that had a cover been off at that time, he would have seen it. Neither Mr. Watford nor his helper, had the knowledge or means necessary to remove the valve covers.
14. Except for the walk-through by Mr. Watford, no one associated with the Friday Center inspects the front lawn area on any regular basis. On 29 September 1995, no inspection was conducted after 1:20 p.m. The two inspections of the property on the date in question were reasonable, and in doing so, defendant exercised reasonable care in maintaining its premises for hidden dangers and unsafe conditions.
15. There is no evidence that the condition of the open valve hole existed for any significant period of time; rather, the greater weight of the evidence tends to show that the valve cover was removed by the contractor maintaining the irrigation system sometime after 1:20 p.m. on 29 September 1995.
***********
 CONCLUSIONS OF LAW
1. On 29 September 1995, plaintiff was an invitee on defendants premises.
2. In a premises liability case involving injury to an invitee, the owner of the premises has a duty to exercise "ordinary care to keep in a reasonably safe condition those portions of its premises which it may expect will be used by its customers during business hours, and to give warning of hidden perils or unsafe conditions insofar as they can be ascertained by reasonable inspection and supervision. Roumillat v. Simplistic Enterprises, Inc.,331 N.C. 57, 414 S.E.2d 339 (1992), citing Raper v. McCrory-McLellan Corp.,259 N.C. 199, 203, 130 S.E.2d 281, 283 (1963). In this case, defendants two inspections of the property on the day of plaintiffs accident constituted a reasonable supervision of the property.
3. In order to prove negligence on the part of the property owner, a plaintiff must show that the owner either (1) negligently created the condition causing the injury, or (2) negligently failed to correct the condition after actual or constructive notice of its existence. Hinson v. Catos, Inc., 271 N.C. 738, 739,157 S.E.2d 537, 538 (1967). There is no evidence that defendant negligently created the condition which resulted in plaintiffs injury. The evidence shows that the only persons with the means of removing the valve covers were the employees of the contractor hired to maintain the irrigation system. The evidence is uncontroverted that defendant had no responsibility for the maintenance of the system. Further, there is no evidence that defendant had either actual or constructive notice of the existence of the removed cover.
4. When the unsafe condition is the result of actions by a third party or an independent agency, it must be shown that the condition "existed for such a length of time that defendant knew or by the exercise of reasonable care should have known of its existence, in time to have removed the danger or [to have] given proper warning of its presence. Powell v. Deifells, Inc.,251 N.C. 596, 600, 112 S.E.2d 56, 58 (1960). The greater weight of the evidence shows that the cover was removed for at most, two to three hours prior to plaintiffs fall. Given that defendant inspected the property twice during the day prior to plaintiffs accident, the undersigned find that this is not so long a period of time as to mandate a conclusion that defendant failed to exercise reasonable care to discover the condition.
5. There is no negligence on the part of any named officer, involuntary servant or agent of the State while acting within the scope of his or her office, employment, service agency or authority, which proximately caused plaintiff an injury; therefore, plaintiff is entitled to no recovery under the Act. N.C. Gen. Stat. 97-143-291.
***********
 ORDER
1. Under the law, plaintiffs claim must be, and is hereby, DENIED.
2. Each side shall bear its own costs.
This the day of June, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER