Arnette J. GUNTER, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 1:97CV106.

United States District Court,
M.D. North Carolina.

May 26, 1998.

William W. Staton, Staton Perkinson Doster Post Silverman Adcock & Boone, P.A., Sanford, NC, for plaintiff.

Lynne P. Klauer, Office of U.S. Attorney, Greensboro, NC, for defendant.

## ORDER

ELIASON, United States Magistrate Judge.

This matter comes before the Court on defendant's motion for summary judgment. (Docket No. 12) Plaintiff, Arnette J. Gunter, brought this negligence action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671–80, alleging that he suffered injury when he slipped and fell on a wet floor in the lobby of the Sanford, North Carolina, Post Office. He blames his fall on defendant's negligence in maintaining the premises. The government argues that it exercised reasonable care at the Post Office and had no duty to warn plaintiff during a rainy day of a wet or slippery floor because such a condition would be obvious to a reasonable person entering the building under the same or similar circumstances.

## Facts

On June 19, 1995, at about 10:00 a.m. or shortly thereafter, plaintiff, an eighty-three-year-old man entered the United States Post Office at 1200 South Horner Boulevard in Sanford, North Carolina, to pick up his mail. He had been in the habit of checking his post office box daily at about the same time for over ten years. It was "misting rain" when he went in, but plaintiff cannot remember for how long it had been doing so before he arrived at the post office. (Plaintiff's Dep. at 22) He had been to the Post Office before when it was raining. (*Id.* at 26) He knew people shook the water off their umbrella's on the lobby floor. (*Id.* at 27)

On the day in question, plaintiff entered the Post Office and stepped onto a floor mat that was about four feet by ten feet in size and wiped his feet. (*Id.* at 32) While on the mat, he saw Toddy Johnson, a friend of his. (*Id.* at 34) He threw up his hand to greet Mr. Johnson and was looking at Mr. Johnson when he stepped off the mat onto the concrete floor. His feet went out from under him and he fell on his buttocks and head, suffering injury to his back, head, and shoulders. (*Id.* at 26, 34–36)

Plaintiff did not notice water on the floor until after he fell and found that he was lying in about one-eighth inch accumulation of water. (*Id.* at 20, 35) There were no warning signs or yellow cones in the area, nor were there any postal employees. Very soon thereafter, Mr. Johnson and a policeman helped him to his feet. Plaintiff checked his mail box, returned to his car, and drove home. The Postmaster reports that the area in question is not unsafe, nor is he aware of any other slip and fall cases. (Odom Aff.)

## Discussion

The standard for summary judgment requires that once the moving party has satisfied its initial responsibility of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law, the burden shifts to the non-moving party to rebut this showing. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548,

2552, 91 L.Ed.2d 265 (1986). For the plaintiff to survive the motion, as the party bearing the burden of proof at trial on the issue of negligence, he must demonstrate sufficient evidence to establish the existence of all elements essential to the case. *Celotex,* 477 at 322, 106 S.Ct. at 2552.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex,* 477 at 322, 106 S.Ct. at 2552. This burden is "particularly strong when the nonmoving party bears the burden of proof." *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990). A mere scintilla of evidence offered by the non-moving party with the burden of proof is not sufficient to overcome a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The FTCA incorporates "the law of the place where the act or omission complained of occurred," which in this case would be the law of North Carolina. 28 U.S.C. § 2674. *See, e.g., Corrigan v. United States,* 815 F.2d 954, 955 (4th Cir.), *cert. denied,* 484 U.S. 926, 108 S.Ct. 290, 98 L.Ed.2d 250 (1987). Because plaintiff has the burden of proof on this issue, he must demonstrate that he has more than a scintilla of evidence that: (1) defendant owed plaintiff a duty of care, (2) defendant's conduct breached that duty, (3) the breach was the actual and proximate cause of plaintiff's injury, and (4) damages resulted from the injury. *Lamm v. Bissette Realty, Inc.,* 327 N.C. 412, 416, 395 S.E.2d 112, 115 (1990).

■ Neither party disputes the fact that plaintiff was on the postal service premises for business purposes, and thereby was an invitee. Consequently, in North Carolina, defendant owed plaintiff the duty of

> ordinary care to keep in a reasonably safe condition those portions of its premises which it may expect will be used by its customers during business hours, and to

give warning of hidden perils or unsafe conditions insofar as they can be ascertained by reasonable inspection and supervision.

*Roumillat v. Simplistic Enterprises, Inc.,* 331 N.C. 57, 64, 414 S.E.2d 339, 342 (1992) (quoting *Raper v. McCrory–McLellan Corp.,* 259 N.C. 199, 203, 130 S.E.2d 281, 283 (1963)).

Plaintiff does not allege that defendant created the condition. Therefore, plaintiff must show that defendant negligently failed either to correct the condition, or to warn of the hazard, after actual or constructive notice of its existence. For purposes of this motion, because the hazard is attributable to an independent agency (rain and the tracking of water by customers), the plaintiff must show that the hazardous condition

> existed for such a length of time that defendant knew or by the exercise of reasonable care should have known of its existence, in time to have removed the danger or [to have] given proper warning of its presence.

*Roumillat,* 331 N.C. at 64, 414 S.E.2d at 343 (quoting *Powell v. Deifells, Inc.,* 251 N.C. 596, 600, 112 S.E.2d 56, 58 (1960)).

■ North Carolina courts hold that a proprietor is not an insurer of the safety of its customers, and consequently have established an important caveat to the above-cited general duty to warn. "Reasonable persons are assumed, absent diversions or distraction, to be vigilant in the avoidance of a known and obvious danger." *Id.,* 331 N.C. at 66, 414 S.E.2d at 344. "A proprietor has no duty to warn an invitee of an obvious danger or a condition of which the invitee has equal or superior knowledge." *Id.,* 331 N.C. at 66–67, 414 S.E.2d at 344. For example, the court in *Roumillat* found that a grease or oil spot in a parking lot near the entrance to a restaurant was a common danger readily observable by business invitees. Therefore, the proprietor did not have a duty to warn.

■ A review of North Carolina case law reveals that this common and obvious danger caveat is not a final rule in and of itself, but rather is an expression of a broad-

er principle which may be summarized as follows. In the case of a business invitee, the law imposes the responsibility to warn, correct or avoid dangerous conditions on the person who has the superior knowledge, either actual or implied, of the condition's existence.[1] Because the proprietor is not an insurer of safety, the customer must show that the proprietor had superior knowledge of the danger in order to recover for a slip and fall. If both had the same degree of knowledge, actual or implied, there will be no recovery. Therefore, nothing else appearing, the business invitee will be expected to be aware of conditions that are so common, obvious, and to-be-expected everyday occurrences that public policy dictates that the cost to the property owner to discover and warn against such dangers would be unreasonable and, therefore, the customer must be made to shoulder costs of an accident arising from his or her own carelessness. In that situation, both the proprietor and the customer have the same degree of knowledge about possible dangers. On the other hand, the caveat does not prevent recovery when the customer can show that the owner had superior knowledge about the seemingly common and obvious dangerous condition existing on the property. However, to escape the caveat and summary judgment, the customer must present specific evidence demonstrating the owner's superior or special knowledge, actual or implied, about the condition.

These principles and distinctions are most apparent in *Dawson v. Carolina Power & Light Co.*, 265 N.C. 691, 144 S.E.2d 831 (1965). There, the court employed the common and obvious danger caveat to the general duty to warn of rainwater tracked in on the business premises. Quoting *Sears, Roebuck & Co. v. Johnson*, 91 F.2d 332, 339 (10th Cir.1937), it found that it would be unreasonable as a matter of public policy to require a proprietor to station a mopper at all store entrances on rainy days. Consequently, to surmount the effect of the common and obvious danger caveat, the court stated that a plaintiff will have to show that the proprietor knew the condition was specifically dangerous (actual knowledge) and/or tacitly recognized the fact (implied knowledge), such as through showing that it was common practice for storekeepers to exercise precautions.

The *Dawson* court was very careful to distinguish its earlier decision in *Powell v. Deifells, Inc.*, 251 N.C. 596, 112 S.E.2d 56. There, the plaintiff introduced specific testimony that the store manager and clerks admitted that the floor was slippery when wet and that the store normally put mats in front of doorways on rainy days and dry mopped the floor if any water accumulated. Consequently, the plaintiff in *Powell* was permitted to present the issue of who had superior knowledge of the dangerous condition to the jury, in contrast to the result in *Dawson*, where summary judgment against plaintiff was affirmed.

The North Carolina Court of Appeals specifically recognized this distinction between *Dawson* and *Powell* in *Gaskill v. Great Atlantic & Pacific Tea Co.*, 6 N.C.App. 690, 171 S.E.2d 95 (1969). In *Gaskill*, the court sustained dismissal prior to trial of plaintiff's slip and fall complaint because there was no evidence that anything other than rainwater was involved and there was no evidence that the floor was slippery when wet or that the defendant failed to follow customary precautionary procedures. The same result was obtained in *Byrd v. Arrowood*, 118 N.C.App. 418, 455 S.E.2d 672 (1995), where plaintiff, even if deemed a business invitee, failed to show that the rainwater on the floor actually

---

1. This Court has not located an identical statement of this principle. This may not be surprising because it has been noted that, in general, the rules relating to the liability of possessors of land are in a state of confusion with a lack of uniformity among states and even inconsistencies within the same jurisdiction. Ernest H. Schopler, Annotation, *Modern Status of the Rule Absolving a Possessor of Land of Liability to Those Coming Thereon for Harm Caused by Dangerous Physical Conditions of Which the Injured Party Knew and Realized the Risk*, 35 A.L.R.3d 230, 237 (1971). Notwithstanding, some courts have clearly recognized that knowledge is the key inquiry in situations similar to the one in the instant case. *Little v. Liberty Savings Bank, FSB*, 191 Ga.App. 732, 382 S.E.2d 734 (1989); *Speaks v. Rouse Company of Georgia*, 172 Ga.App. 9, 321 S.E.2d 774 (1984); *Camp v. J.H. Kirkpatrick Co.*, 250 S.W.2d 413 (Tex.Civ.App.1952).

made it slick at the time in question and that the church knew about it.[2]

▮▮▮▮ On the other hand, when a plaintiff has evidence that the defendant openly acknowledges that the floor was slippery or impliedly does so by having established a mopping policy, this may be sufficient to avoid dismissal based on the common and obvious danger caveat and permit the jury to decide the issue of who had greater knowledge of the danger so as to prevent or avoid an accident. That was the situation in *Powell v. Deifells, Inc.*, 251 N.C. 596, 112 S.E.2d 56, mentioned above, and in *Smith v. Wal-Mart Stores, Inc.*, 128 N.C.App. 282, 495 S.E.2d 149 (1998). In both cases, the proprietor's manager specifically acknowledged that the floor was slippery when wet and that the store had a mopping policy which was not followed. The jury verdicts for plaintiffs were affirmed. In both cases, the court does not discuss the common and obvious danger caveat, inferentially because the caveat no longer controls once the plaintiff introduces specific evidence of superior knowledge through defendant's customary policies[3] or defendant's actual admission that the floor was slippery. In that instance, the court need only find that the proprietor arguably had knowledge of the dangerous condition such as by a showing that rain had been falling a sufficient time prior to the accident so as to infer that the proprietor had sufficient notice of wetness accumulation, ergo, a dangerous condition. *See Smith v. Wal-Mart Stores, Inc.*, 495 S.E.2d at 152 (evidence that it had been raining for over an hour).

In the instant case, plaintiff fell because of an apparent accumulation of rainwater near the entrance to the Post Office. Nothing indicates that this water was in any way hidden or not obvious. *Contrast Yates v. Haley*, 103 N.C.App. 604, 406 S.E.2d 659 (1991) (evidence that puddle not in plain view). Plaintiff was a regular customer and,

---

**2.** The federal court's decision in *Faircloth v. United States*, 837 F.Supp. 123 (E.D.N.C.1993), presents an interesting twist to the application of the common and obvious danger caveat. There, the post office did not have a mopping policy, but the government did not contest that the floor was, in fact, slippery when wet. *Id.* at 127. Nevertheless, the Court granted summary judgment to defendant because the plaintiff regularly visited the post office and not only knew that it was raining when she entered it on the day in question, but had entered an hour earlier and noticed puddles on the floor. *Id.* at 125, 130. She failed to show a known condition which was not as obvious to her as it was to the proprietor. *Id.* at 128. In effect, the court found that it was undisputed that both the proprietor and the customer had *equally enhanced* knowledge of the dangerous condition. If the evidence could be construed to support a finding that the owner had superior knowledge, the issue must be decided by trial.

**3.** There are two important observations to be made about how the North Carolina courts treat evidence of a common practice or policy. First, the practice or policy need not necessarily be one actually employed by the defendant proprietor. The North Carolina Supreme Court in *Dawson v. Carolina Power & Light Co.*, 265 N.C. 691, 694–95, 144 S.E.2d 831, 834 (1965), referred to the common practice and precautions of storekeepers or keepers of offices. And, in *Robinson v. S.H. Kress & Co.*, 137 F.Supp. 19, 20 (E.D.N.C. 1956), the court recognized the common practice and custom among businesses to use mats on rainy days, but denied relief to plaintiff in part because plaintiff failed to show that such was the custom for stores like defendant's which had a marquee protecting the entrance. Therefore, implied knowledge encompasses imputed knowledge based not just on the proprietor's standard of conduct, but also on standards recognized by others or perhaps those imposed by law by reason of public policy. *See Kuykendall v. Newgent*, 255 Ark. 945, 504 S.W.2d 344 (1974) (court imputed enhanced knowledge to store owner that ice and snow accumulation of 18–20 hours was dangerous in Arkansas even though condition was "known or obvious danger" to the customer).

Second, if the proprietor was actually following the policy at the time of the accident, this forecloses liability. *Stafford v. Food World, Inc.*, 31 N.C.App. 213, 216, 228 S.E.2d 756, 758 (1976). In *Stafford*, the defendant business knew the floor was slippery, had a mopping policy, and had mopped ten (10) minutes before the accident. A directed verdict for defendant was affirmed. Even though the proprietor had actual knowledge of the slippery condition, it could not be held liable because it was not shown that it had not taken "reasonable precautions to protect its patrons from any dangerous condition created by the accumulation of water on the floor." *Id.* In effect, there was no showing that the store owner, who thought the mopping corrected the slippery condition, had superior knowledge that the floor was slippery, as compared to the customer, who could readily observe the wet floor. In such a situation, a customer may not recover in North Carolina.

therefore, was aware or should have been aware that water conditions could exist on the Post Office floor during periods of rain. *See Faircloth v. United States,* 837 F.Supp. 123, 125, 130 (E.D.N.C.1993) (regular customer); *contrast, Powell,* 251 N.C. 596, 112 S.E.2d 56 (first visit to store). Plaintiff failed to show that the defendant has acknowledged the floor was slick when wet as in *Powell,* 251 N.C. 596, 112 S.E.2d 56, and *Smith,* 495 S.E.2d 149.

There is some evidence in the record concerning customary practices but this is scant. Plaintiff testified at his deposition that he talked to a person who supposedly took care of maintenance but that this person was not there on the day in question, nor was the person's backup. From this, plaintiff evidently concludes that there was a mopping policy. (Plaintiff's dep. at 22 & 26) However, this evidence amounts to bare speculation which North Carolina refuses to permit to establish elements of negligence. *Roumillat,* 331 N.C. at 68–69, 414 S.E.2d at 345. The Postmaster specifically stated in his affidavit that he had no knowledge that the floor was slick when wet and that there had not been a prior slip and fall case. This evidence presented by defendant is uncontradicted.

Plaintiff attempts to surmount these problems by offering his own opinion that moisture made the floor slick. This, however, fails to show that defendant had notice of that condition. Plaintiff did not establish how long it had been raining at the post office before the fall. Second, plaintiff argues that defendant must have known of the water accumulation on the day in question because it amounted to a one-eighth inch thick accumulation. However, this observation by itself fails to show that the accumulation was, in fact, unusual. Plaintiff himself stated that he did not notice it when he went into the post office. And, this claim of slipperiness is undercut by the fact that at the time plaintiff fell he was waving and acknowledging Mr. Johnson, inasmuch as the fall could have resulted from plaintiff's lack of attention as opposed to unusual water accumulation. Nor was this distraction of Mr. Johnson an event created by defendant so as to reduce plaintiff's duty to observe the obvi-

ous. *Contrast Pulley v. Rex Hospital,* 326 N.C. 701, 709, 392 S.E.2d 380, 385 (1990).

The alleged hazardous condition was created by an independent agency and this condition was both common and obvious. Therefore, in order to avoid summary judgment, plaintiff was required to show specific and special knowledge on defendant's part of the dangerous condition, either through direct evidence slipperiness such as through an admission or by indirect evidence such as proof of industry or store policy. Plaintiff's proof fails to rise to this level and, therefore, plaintiff fails to show that defendant breached a duty of care by failing to correct or warn of a common and obvious unsafe condition.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (docket no. 12) is granted and this action be, and the same hereby is, dismissed.