**James D. ALLEN, Plaintiff,**

v.

**CROWN CENTRAL PETROLEUM CORPORATION and Fast Fare, Inc., Defendants.**

**No. 1:03 CV 00422.**

United States District Court, M.D. North Carolina.

Jan. 18, 2005.

Dean A. Shangler, Chapel Hill, NC, for Plaintiff.

Richard E. Fay, Hamilton Gaskins Fay & Moon, PLLC, Charlotte, NC, for Defendants.

### ORDER

ELIASON, United States Magistrate Judge.

This case is before the Court on defendants' motion for summary judgment. Plaintiff cites the following facts, which are largely undisputed for purposes of resisting defendants' motion for summary judgment.

### Facts

On January 22, 2001, plaintiff and his wife were driving through Durham, North Carolina, on their way to Raleigh when plaintiff decided to stop at a Crown convenience store and buy a soda. He had not previously been in this store.

The store parking lot was very busy, but plaintiff parked and entered the store. Once he entered, he saw glass-front coolers to his right, along the back wall, and went to get two drinks. As he walked to the coolers, plaintiff wound his way through other customers with care. This is because plaintiff was out of work due to a back injury and surgery, but felt that he was close to returning. He did not want to collide with anyone and re-injure his back.

Upon reaching the back wall, plaintiff turned left and went along the aisle parallel to the coolers to find the drinks he wanted. Once he found them, he removed the drinks and continued to walk down the aisle in the same direction he had been traveling. This aisle was also crowded and he had to maneuver around people. However, he could see that the floor was clear of objects.

As plaintiff walked, he began to look for the cash register so that he could pay for his drinks. He never saw the register itself, but did see a line of people near the front of the store. Plaintiff assumed that the register was in that location and turned down an aisle to his left. Upon turning, he immediately tripped and fell over a green plastic tote that was sitting in the aisle. This tote, which was twelve inches high and eighteen inches wide, was left there by a store employee who had been stocking shelves. Plaintiff testified in his deposition that a store employee approached him after the accident, asked him if he was hurt, and then said that his boss had told him not to leave the tote in the floor because someone could trip over it.

Plaintiff was hurt in the fall. He was removed from the scene in an ambulance and has since had surgery on his neck, spine, shoulder and knee. He states that his medical expenses for treatment of his injuries exceed $148,000 to date.

Based on these facts, plaintiff sued defendants in state court alleging that their employee's negligence in leaving the tote on the floor caused his fall and injuries. Defendants removed the case to this Court and now seek summary judgment.

### Summary Judgment Standards

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party, drawing all inferences in that party's favor. *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990). When opposing a motion for summary judgment, a party cannot merely rest on conclusory statements, but must provide specific facts. *Id.* "The summary judgment inquiry thus scrutinizes the

plaintiff's case to determine whether the plaintiff has proffered sufficient proof, *in the form of admissible evidence,* that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993) (emphasis added). A mere scintilla of evidence will not suffice. Instead, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. *Sibley v. Lutheran Hosp. of Maryland, Inc.,* 871 F.2d 479 (4th Cir.1989).

### Discussion

Defendants make two arguments in support of their motion for summary judgment. First, they contend that plaintiff cannot recover because the dangerous condition that led to his fall was open and obvious so that defendants had no duty to warn plaintiff of the condition. Second, defendants assert that, even if they did have a duty to warn, plaintiff was contributorily negligent by not paying sufficient attention to the ground in front of him.

The parties have no serious disagreement concerning the law that is to be applied in this case. Businesses have a duty to properly maintain their premises to protect lawful visitors. *Pulley v. Rex Hospital,* 326 N.C. 701, 392 S.E.2d 380 (1990). This means that store owners must keep their stores in reasonably safe condition and warn visitors of hidden dangers of which they have express or implied knowledge. *Price v. Jack Eckerd Corporation,* 100 N.C.App. 732, 735, 398 S.E.2d 49, 51–52 (1990). Where store aisles are concerned, stores must keep them so that a reasonably careful and prudent person would consider patrons to be protected while exercising due care for their own safety. *Id.*

Defendants do not argue that the tote in the aisle was not a dangerous condition or that it could be said that having a tote in the aisle constitutes maintaining "the premises in a condition reasonably safe for the contemplated use." *Branks v. Kern,* 320 N.C. 621, 624, 359 S.E.2d 780, 782 (1987). This means that defendants had "a duty to warn of hidden dangers known to or discoverable by the defendants." *Id.*

For purposes of summary judgment, the evidence shows that defendants had knowledge of the tote being on the floor in the aisle. Plaintiff testified at his deposition that one of defendants' employees stated after his accident that he had left the tote on the floor and that he had been warned by his boss not to do so because someone could fall and get hurt. This is evidence that shows actual knowledge by at least one of defendants' employees concerning the existence of the condition that injured plaintiff and the danger that it posed to customers. And because plaintiff's evidence is that he did not have knowledge of the existence of the tote before he tripped over it, defendants would have a duty to warn plaintiff of the danger, nothing else appearing. *Kremer v. Food Lion, Inc.,* 102 N.C.App. 291, 401 S.E.2d 837 (1991). In *Kremer,* the plaintiff tripped over dog food bags which he did not see and which were protruding from a shelf in a grocery store. Plaintiff then witnessed the store manager reprimand a stock boy, saying, "You don't leave anything in an aisle protruding the way that was. That's not the way we put up a display. Get those damn bags out of here." *Id.* at 295, 401 S.E.2d at 839. The court stated that "[t]his evidence was sufficient to take the issue of defendant's negligence to the jury."

In this case, if plaintiff had noticed the tote on the floor, it would be possible for the Court to find as a matter of law that the danger was not hidden and dismiss the case. This is because "the law imposes the responsibility to warn, correct or avoid dangerous conditions on the person who has the superior knowledge."

*Gunter v. United States,* 10 F.Supp.2d 534, 537 (M.D.N.C.1998). Therefore, if a business and its customer have an equal level of knowledge, the customer cannot recover for any injuries. *Id.* However, and this is important for defendants' argument here, plaintiff's knowledge can be "either actual or implied, of the condition's existence." *Id.* Stated differently, there is no duty to warn when the plaintiff had equal or superior knowledge of the condition, including because the condition was a common or obvious danger. *Gunter,* 10 F.Supp.2d at 537.

■ Because plaintiff claims he did not see the tote, defendants rely on the common and obvious danger caveat to show plaintiff had equal or superior knowledge of the condition. A property owner does not have a duty to warn where the hazard *would be obvious* to a person of ordinary intelligence, using his eyes in an ordinary manner. *Pulley* at 705, 392 S.E.2d at 383. In deciding whether a hazardous condition is "obvious," the circumstances surrounding a plaintiff's accident must be considered. *Pulley,* at 705, 392 S.E.2d at 383. This makes such cases highly fact dependent and the facts must be viewed in their totality. *Id.* at 706, 392 S.E.2d at 384. In the situation where a plaintiff claims not to have seen the hazard, the question is not whether a person could have looked down and seen the hazard, but whether a "person using ordinary care for his or her own safety under similar circumstances would have looked down . . . ." *Dowless v. Kroger Company,* 148 N.C.App. 168, 172, 557 S.E.2d 607, 610 (2001) (emphasis added). Because this standard is heavily fact dependent, any finding that a condition is obvious as a matter of law must be approached with great caution.

Defendants want the Court to make a determination that the tote in the aisle was

an obvious hazard as a matter of law.[1] Thus, defendants must show that the danger was so obvious that it could not, as a matter of law, constitute a hidden danger which would invoke a duty to warn. If defendants cannot show this, the question concerning the obviousness of the danger is one for the jury. *Gunter,* 10 F.Supp.2d at 538.

Here, a number of facts which have been previously considered by the North Carolina courts combine to preclude a finding that defendants had no duty to warn plaintiff because the hazard was obvious. For instance, plaintiff did not approach the tote straight on and from a distance, but instead hit it immediately upon turning into and beginning to walk down the aisle. Both of these facts weigh in plaintiff's favor. *See Hicks v. Food Lion, Inc.,* 94 N.C.App. 85, 379 S.E.2d 677 (1989) (movement of turning from one checkout lane to another made it less likely that a plaintiff would see spilled milk than if walking straight toward it); *Price, supra* (customer tripped over box near her feet almost as soon as she began walking). Likewise, there is evidence in the form of plaintiff's testimony to support jury findings that his attention was diverted from the floor ahead of him because he was looking for the checkout, and because he needed to avoid running into other customers. *See Price, supra* (customer tripped while walking away and looking in direction store employee had pointed when giving directions); *Dowless, supra* (customer in parking lot did not see hole partially because she was looking to avoid traffic); *Nelson v. Novant Health Triad Region, L.L.C.,* 159 N.C.App. 440, 583 S.E.2d 415 (2003) (worker in hospital did not see hazard near her feet because she was looking ahead at obstacles in the hallway).

---

1. Defendants do not assert that it was a common hazard.

While all of the cases cited above have some facts that distinguish them from the present case, all were cases where the plaintiffs were judged to have produced enough evidence to take their case to the jury and, in each case, the factors mentioned above weighed in the plaintiff's favor. The combined presence of all of these factors in the case before the Court is more than sufficient to have plaintiff's case go forward at this time. It cannot be said as a matter of law, viewing the facts in a light most favorable to plaintiff, that the tote was so obvious to a reasonable person in plaintiff's position that it should have been discovered and avoided. While there seems to be little doubt that plaintiff could have seen the tote had he looked down, the jury must be the one to determine whether a reasonable person would have done so while turning into an aisle and trying to locate the checkout in a crowded convenience store.

■ In addition to claiming that no duty to warn existed because the tote was a common and obvious hazard, defendants also contend that their motion for summary judgment should be granted because plaintiff was contributorily negligent for failing to look down and see the tote. Contributory negligence is an affirmative defense in North Carolina. N.C. R. Civ. P. 8(c). "It is well-settled in North Carolina that a claimant's negligence action will be barred if he failed to exercise ordinary care for his own safety, and that failure contributed to his injury." *Hicks* at 90, 379 S.E.2d at 680.

In cases like the present one, when ruling on a motion for summary judgment, the Court is deciding whether a condition is so common or obvious that it negates the duty to warn. If the Court cannot dismiss the claim as a matter of law, then the case must be decided by the jury or other factfinder. It is at this point that defendants must prove their affirmative defense that the danger was common or obvious. In terms of contributory negligence, the test is indistinguishable from that employed in ruling on a summary judgment motion. It is whether or not "the hazard in question should have been obvious to a person using reasonable care under the circumstances." *Dowless* at 171, 557 S.E.2d at 609. This decision must be made by considering all of the facts in their totality. *Id.* It logically follows that if the Court could not grant summary judgment to defendants concerning the duty to warn because the facts raise a material issue for the jury concerning whether a reasonable person in plaintiff's position should have been looking down at his feet at the time that he tripped over the tote, it clearly cannot grant summary judgment to defendants based on their derivative affirmative defense of contributory negligence for which they bear the burden of proof. Defendants' motion for summary judgment will be denied.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (docket no. 8) be, and the same hereby is, denied.

**IT IS FURTHER ORDERED** that within twenty days, the parties will submit a revised case management plan.[2]

---

**2.** Ordinarily, having denied the motion for summary judgment, the Court would next proceed with the setting of a trial date. However, in this case, the parties delayed mediation and some expert discovery because they wanted the summary judgment motion decided first. Now that the motion has been decided, the parties should proceed immediately with mediation and the remaining discovery. A trial date, if one proves to be necessary, will be set following completion of mediation and discovery.