**Carmen HACKWORTH, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**C.A. No. 2:03–2868–23.**

United States District Court,
D. South Carolina,
Charleston Division.

Feb. 11, 2005.

---

Paul A. James, Summerville, SC, for Plaintiff.

Joseph P. Griffith, Jr., Charleston, SC, for Defendant.

## *ORDER*

DUFFY, District Judge.

This matter is before the court upon Defendant's Motion for Summary Judgment. Plaintiff Carmen Hackworth ("Hackworth") brought suit against the Government pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671–80, alleging that she suffered injuries when she slipped and fell on a wet floor at the Naval Weapons Station's Mini–Mart Convenience Store in Goose Creek, South Carolina (hereinafter "Mini–Mart"). For the reasons stated herein, the Government's Motion for Summary Judgment is granted.

## *BACKGROUND*

The events giving rise to Hackworth's

claims occurred around 9:00PM [1] on Sunday, October 26, 1997. According to Hackworth, it had been raining for several days, and was raining as she approached the Mini–Mart at the Naval Weapons Station. Hackworth parked across the street from the Mini–Mart and recalls "jumping puddles" on the way from her car to the Mini–Mart entrance. (Hackworth Dep. at 18). As Hackworth approached the door of the Mini–Mart, she stopped to stomp her feet and shake the water off of herself before entering. *Id.* Hackworth contends that, on her first step inside the Mini–Mart, as soon as she stepped off of a rubber mat,[2] she slipped and fell. Hackworth maintains that she did not see the water (which she later described as a three-foot wide puddle of water) [3] until after she fell although she was "looking down" when she walked into the store. (Hackworth Dep. at 28). According to Hackworth, she was looking down in order to ensure that she walked carefully due to the inclement weather. Hackworth maintains that, despite the fact that she was looking down where the puddle would have been, she likely did not see the puddle because of the "bright lights" of the Mini–Mart. In hindsight, Hackworth hypothesizes that the bright lights may have created a glare obstructing her view of the puddle. (Hackworth Dep. at 29, 30).

Rebecca Glover, a manager of the Mini–Mart, recalls the night in question. At the time of the accident, Glover was working in a separate package store side of the Mini–Mart.[4] After her fall, Hackworth went to the package store to tell Glover of her accident.[5] Glover recounts that one of the floor mats at the entrance to the Mini–Mart may have been pulled up because it got saturated after days of rain and the floor dried best without it in place. (Glover Dep. at 10, 13). In any event, Glover says, there were "Wet Floor" signs on prominent display. (Glover Dep. at 10).[6]

Hackworth seeks actual and punitive damages and all legal fees and costs. According to Hackwork, as a result of the Government's negligence, she has suffered permanent injuries, physical and mental pain and suffering, limitations on her ability to earn a living, loss of enjoyment of life, and future medical costs.

### STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to

---

1. Interestingly, the manager of the Mini–Mart, Ms. Rebecca Glover, recalls that the incident occurred in the afternoon and not close to the time of the Mini–Mart's evening closing.

2. While neither party has submitted photographs of the accident scene, apparently there were four rubber mats at the entrance of the Mini–Mart. It appears that the third rubber mat was located directly in front of an automatic door that opened into the Mini–Mart.

3. The Government contends that instead of a large puddle being present before Plaintiff fell, her fall in wet clothes actually created whatever puddle of water she saw after the accident.

4. At the time of the accident, the Mini–Mart building was partitioned into two distinct stores: a convenience store (where Hackworth fell) and a package store, which sold alcohol. The package store no longer exists.

5. Hackworth also told Glover that there was a witness to the accident, the convenience store cashier, who verified to Glover that Plaintiff had fallen. The cashier is identified in the parties' memoranda only as "Dawn." (Glover Dep. at 9). The Government does not dispute that Plaintiff's fall actually occurred.

6. In an affidavit, Hackworth states that there were no wet floor signs on display at the time of her fall. (Hackworth Aff. ¶ 5).

weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.' " *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). A mere scintilla of evidence offered by the non-moving party with the burden of proof is not sufficient to overcome a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

### ANALYSIS

Under the FTCA, the United States is liable in the same manner and to the same extent as a private individual would be under the circumstances. *See* 28 U.S.C. § 2674; *see also Medina v. United States*, 259 F.3d 220, 223 (4th Cir.2001). The FTCA incorporates "the law of the place where the act or omission complained of occurred," in this case, South Carolina. *See* 28 U.S.C. § 1346(b); *see also Corrigan v. United States*, 815 F.2d 954, 955 (4th Cir.1987). Under South Carolina law and the governing summary judgment standard, Hackworth must put forth evidence demonstrating that (1) the Government owed her a legal duty of care; (2) the Government breached that duty by a negligent act or omission; and (3) the Government's breach proximately caused her damages. *See Washington v. Lexington County Jail*, 337 S.C. 400, 523 S.E.2d 204, 206 (1999).

Both parties acknowledge that Hackworth was an invitee entitled to the same standard of care governing merchants in the business invitee context. "While a merchant is not an insurer of the safety of his customers, he or she has a duty to exercise due care to keep his premises in a reasonably safe condition." *Pinckney v. Winn–Dixie Stores, Inc.*, 311 S.C. 1, 426 S.E.2d 327, 329 (1992). A plaintiff seeking recovery for injuries resulting from a foreign substance on a premises owner's floor must establish either that "[1] the substance was placed there by the defendant or its agents, or [2] that the defendant had actual or constructive notice the substance was on the floor at the time of the slip and fall." *Wintersteen v. Food Lion, Inc.*, 344 S.C. 32, 542 S.E.2d 728, 732 (2001). This does not require premises owners to take actions to prevent or minimize the foreseeable risk of a foreign substance ending up on its floor, but only imposes a duty upon them when they place the substance on the floor or have actual or constructive notice that it is there. *Id.*

The Government argues that it had no duty to warn Hackworth of the puddle she allegedly slipped in because it had no actual or constructive notice of that puddle. In fact, it is the Government's position that a puddle did not exist until Ms. Hackworth slipped on the floor in wet clothes (Def. Mem. at 8 –9). Even assuming that a puddle existed before Hackworth's fall, and that the Government had constructive notice of the puddle, under South Carolina law, the owner of property owes no duty to use reasonable care to take precautions against or to warn guests of open and obvious dangers. In such situations, the guests themselves have a duty to discover and avoid the danger. *See Neil v. Byrum,* 288 S.C. 472, 343 S.E.2d 615, 616 (S.C.1986).

As Hackworth points out, the open and obvious danger rule has an exception, where the premises owner should reasonably anticipate that invitees may be distracted or will not discover the danger. *See Callander v. Charleston Doughnut Corp.,* 305 S.C. 123, 406 S.E.2d 361, 362–63 (1991). The degree of care owed with regard to an open and obvious danger is commensurate with the circumstances involved, including the possessor's prior knowledge of the defect's existence and the age and capacity of the invitee. *See Larimore v. Carolina Power & Light,* 340 S.C. 438, 531 S.E.2d 535, 539–40 (2000).

Both parties cite to this court's ruling in *Green v. United States,* C.A. No. 9:02–3925–23, a decision ultimately overturned by the Fourth Circuit Court of Appeals. *See Green v. United States,* 105 Fed.Appx. 515, 2004 WL 1746699 (4th Cir.2004). In *Green,* this court granted summary judgment to the Government after concluding that a twelve-foot long puddle in the visiting room of a federal prison was an open and obvious danger. The Fourth Circuit Court of Appeals disagreed, finding that

factual issues precluded the grant of summary judgment to the Government. In reasoning that the puddle was not necessarily open and obvious, the court relied on the fact that the plaintiff "walked over thirty-six feet out of the rain on dry floors before opening the door to the visitor's room" where she slipped and fell. *Green,* 105 Fed.Appx. 515, 516, 2004 WL 1746699 at *1. Thus, the Fourth Circuit reasoned

> Green entered the visitor's room with no warning that there would be a large puddle on the opposite side of the door. Moreover, even if the puddle was large enough to be seen immediately, Green testified at her deposition that she began to slip as soon as she entered the room. Thus, while the puddle may have been open and obvious to someone standing in the room, Green's view was blocked by the door, and she potentially did not have time to process the puddle's danger before she fell.

*Id.* at 515–17, 2004 WL 1746699 *1–2.

The Government argues that this case is readily distinguishable from *Green,* while Hackworth attempts to analogize the facts presented in *Green* to those presented in the matter *sub judice.* In the court's view, the Government has the better argument. Here, Hackworth had not walked thirty six-feet out of the rain on dry floors before entering the Mini–Mart. Instead, Hackworth had been "jumping puddles," and had stopped to stomp her feet and shake the water off of herself on her way into the Mini–Mart. (Hackworth Dep. at 16, 18). Thus, unlike in *Green,* Hackworth did not enter the Mini–Mart without warning that there could be a puddle at the entrance. Moreover, Hackworth testified at her deposition that she was purposely looking down as she entered the Mini–Mart in an attempt to be careful given the large amount of rain that had fallen.

Additionally, unlike in *Green,* here there is no reason to suspect that Hackworth might have been so distracted by entering the Mini–Mart that she failed to see the puddle. In *Green,* the Fourth Circuit held that the plaintiff could reasonably have been distracted by handling a visitor's room door and sign-in procedures. at 516–17, 2004 WL 1746699 at *2. Thus, the court concluded, the Government had a duty to warn her of an open and obvious danger under *Larimore* and *Callander. Id.*

Here, however, Hackworth repeatedly states that she was paying close attention to the floor when she came in due to the wet conditions outside. (Hackworth Dep. at 29) ("I remember that I was looking down, and I was walking carefully, because I remember that it was-you know, the weather was really messy."). Hackworth appears to suggest that she was blinded by bright lights of the Mini–Mart, and thus failed to see the puddle she claims existed. The court finds, however, that given Hackworth's knowledge of the rainy conditions, the close attention Hackworth says she was paying to the floor, and the fact that a three-foot wide puddle could not be entirely obstructed by overhead lights, the Government had no duty to warn. This finding comports with the great majority of Federal Tort Claims Act cases involving slip and fall accidents on wet floors. *See, e.g., Holland v. United States,* 918 F.Supp. 87, 89 (S.D.N.Y.1996) ("The cases essentially are uniform which have considered the United States' liability under the FTCA in customers' slip and fall cases arising from injuries suffered when slipping on wet post office floors during or after a rainstorm. Even in the case where no sign was posted, no mats or runners were provided, and recommended mopping procedures were not followed, the courts have repeatedly found that the Government did not breach a duty to postal customers because a proprietor's duty to warn does not extend to obvious dangers."); *see also Gunter v. United States,* 10 F.Supp.2d 534 (M.D.N.C.1998) (rainwater that accumulated on post office floor was open and obvious hazard and patron injured in slip and fall could not recover under FTCA); *Faircloth v. United States,* 837 F.Supp. 123, 128–30 (E.D.N.C.1993) ("Everybody knows that the hallways … during a continued rainstorm are tracked all over by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be. It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in or is carried by wet feet or clothing or umbrellas ….") (internal citation omitted); *Hess v. United States,* 666 F.Supp. 666, 673 (D.Del.1987) (dismissing a plaintiff's FTCA claim for negligence after she slipped on a rainy day in the outer lobby of a post office on a portion of tile floor exposed between two mats; although no wet floor signs or warnings were posted at the time of the accident, "the floor's slippery condition was obvious and easily discoverable" by the plaintiff).

### CONCLUSION

It is therefore, **ORDERED,** for the foregoing reasons, that Defendant's Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**