**FORT DEARBORN LIFE INSURANCE COMPANY,**
Plaintiff,

v.

**Beverly TURNER, as guardian ad litem for A.R.Y.; and Vanzolla McMurran, as guardian ad litem for A.H., Defendants.**

No. 2:06–CV–4–H(3).

United States District Court,
E.D. North Carolina,
Northern Division.

Oct. 3, 2007.

**500**

William Jacob Long, IV, Burr & Forman, LLP, Birmingham, AL, for Plaintiff.

John G. Trimpi, Trimpi & Nash, LLP, Elizabeth City, NC, Ronald E. DeVeau, Ronald E. DeVeau, P.C., Nags Head, NC, for Defendants.

### ORDER

MALCOLM J. HOWARD, Senior District Judge.

This is an interpleader action brought by Fort Dearborn Life Insurance Compa-ny ("Fort Dearborn") to determine the validity of competing claims to life insurance proceeds payable upon the death of Anthony Eugene Hughes. Before the court are cross-motions for summary judgment filed by the claimants, defendant Beverly Turner and defendant Vanzolla McMurran, on behalf of their minor children. Appropriate responses have been filed, and the time for further filings has expired. These matters are ripe for adjudication.

### STATEMENT OF THE FACTS

On April 16, 1995, Anthony Hughes ("Hughes") and claimant Vanzolla McMurran ("McMurran") were involved in a car accident while driving to a party. Hughes died as a result of the accident. As a benefit of his employment with City Beverage Company, Hughes had a life and accidental death insurance policy in the amount of $56,000 issued by Fort Dearborn's predecessor in interest. Because Hughes was unmarried and had not designated a beneficiary, the policy directed the proceeds to be paid "in equal shares to [Hughes'] then living children, if any."

One child had been born to Hughes at the time of his death: A.R.T., to whom claimant Beverly Turner ("Turner") gave birth on December 7, 1989.[1] Although never married to Turner, Hughes acknowledged paternity of A.R.T., and on November 1, 1991, an order declaring Hughes to be A.R.T.'s natural father was entered in Pasquotank County District Court.

Eight months after Hughes' death, McMurran gave birth to A.H. Although not married to Hughes, McMurran gave the child Hughes' surname and listed

---

1. The complaint in this action names the child as "A.R.Y." However, Turner has advised the court that the child's initials are "A.R.T."

Hughes as the father on the child's birth certificate. McMurran maintains that A.H. is Hughes' child and has obtained social security survivorship benefits for the minor child as a dependent of Hughes.

Turner was appointed administratrix of Hughes' estate and, in that capacity, filed a wrongful death action against McMurran, who was driving the vehicle in which Hughes was killed. Shortly after Hughes' death, Turner also made a claim to the insurance proceeds on behalf of her daughter, A.R.T. Fort Dearborn initially recognized A.R.T. as the sole beneficiary under the policy and, in June 1995, offered Turner the option of receiving payment of the insurance proceeds in full or allowing Fort Dearborn to retain the life insurance proceeds and pay to A.R.T. the full proceeds plus four percent interest once A.R.T. reached eighteen years of age. On June 28, 1995, Turner accepted Fort Dearborn's offer to hold the funds for A.R.T. until she reached majority.

Approximately five years later, McMurran presented a demand for one-half of the policy proceeds on behalf of her daughter, A.H. At that point, Fort Dearborn advised Turner and McMurran that it believed the proceeds should be equally divided between the two children. Thereafter, Fort Dearborn filed this interpleader action to resolve the competing claims of Turner and McMurran. This court previously dismissed Turner's state-law counterclaims for lack of subject matter jurisdiction and struck her estoppel defense as legally insufficient. (*See* Order dated Dec. 19, 2006 [DE # 31].) [2]

Turner and McMurran have filed cross-motions for summary judgment. Turner claims that A.R.T. is entitled to the insurance proceeds in full, and McMurran claims that the proceeds must be equally divided between A.R.T. and A.H. under the terms of the life insurance policy.

## COURT'S DISCUSSION

### I. Standard of Review

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. *Faircloth v. United States*, 837 F.Supp. 123, 125 (E.D.N.C.1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine

---

**2.** The court noted that the allegations set forth in Turner's affirmative defense and counterclaims, if true, may entitle Turner to recover from Fort Dearborn an amount *equal to the* full sum of the policy proceeds plus interest. However, the court determined that any such claim was independent of Fort Dearborn's

interpleader claim and the relationship between the two claims was simply too attenuated to confer supplemental jurisdiction over Turner's counterclaims. Thus, the court dismissed the counterclaims and informed Turner that her claims must be pursued, if at all, in state court.

issue exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

■■■ In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. In addition, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [fact-finder] could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Rather, summary judgment is appropriate only when the evidence would lead a reasonable person to but one conclusion. *Id.* at 250, 106 S.Ct. 2505. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on these motions. *Faircloth,* 837 F.Supp. at 125.

## II. Interpretation of "then living children"

The first question before the court is whether under North Carolina law a child *en ventre sa mere*[3] is entitled to share in the proceeds of a life insurance policy benefiting the insured's "then living children." Turner argues that such a child is not entitled to share because the language "then living" constitutes a restriction on the class of beneficiaries and requires that each beneficiary be alive and capable of being identified at the time of the insured's death. McMurran, on the other hand, contends that a child *en ventre sa mere* is

included in the class of "then living children" provided that the child survives birth.

■■■ The public policy of North Carolina recognizes that an unborn infant is a person. *DiDonato v. Wortman,* 320 N.C. 423, 435, 358 S.E.2d 489, 496 (1987) (Martin, J., concurring in part & dissenting in part). Section 41–5 of the North Carolina General Statutes provides that "[a]n infant unborn, but in esse, shall be deemed a person capable of taking by deed or other writing any estate whatever in the same manner as if he were born." N.C. Gen.Stat. § 41–5 (2007). In *Mackie v. Mackie,* 230 N.C. 152, 52 S.E.2d 352 (1949), the North Carolina Supreme Court stated that "[a] child en ventre sa mere is ... included in the phrase 'persons living at the death' of any person." *Mackie,* 230 N.C. at 154, 52 S.E.2d at 354. The court reasoned:

> [N.C. Gen.Stat. § 41–5] gives to an unborn infant the same capacity to take property by "deed or other writing," ... as under the law governing its right to take by inheritance or devise. "Biologically speaking, the life of a human being begins at the moment of conception in the mother's womb, and in the law of inheritance this view is adopted, so that if one dies intestate, his unborn child, if eventually born alive, and not too soon after conception to be capable of living, inherits, equally with its older brothers and sisters; and by analogy to this rule, a devise or bequest to children or grandchildren includes a posthumous child or grandchild en ventre sa mere at the time of the testator's death. A child en ventre sa mere is also included in the phrase "persons living at the death" of any person. By a legal fiction or indulgence, a legal personality is imputed to

**3.** *En ventre sa mere* means "in the mother's womb." *Black's Law Dictionary* 555 (7th ed.1999).

an unborn child as a rule of property for all purposes beneficial to the infant after his [birth], but not for purposes working to his detriment. The interest taken by the child at birth dates back to the time of conception or to the later originating of title, and cannot be defeated by intermediate proceedings to which he was not a party."

*Mackie*, 230 N.C. at 154–55, 52 S.E.2d at 354(quoting 27 Am.Jur. § 747).

■ Although *Mackie* concerned the conveyance of property by deed to the grantee and his children, the unambiguous language of *Mackie* leaves no doubt that it applies equally to a life insurance policy. *See Mackie*, 230 N.C. at 154, 52 S.E.2d 352(discussing unborn infant's capacity to take "by deed *or other writing* " (emphasis added)); *cf. Scull v. Aetna Life Ins. Co.*, 132 N.C. 30, 43 S.E. 504, 505 (1903) ("A policy of insurance is essentially like a gift by will . . . ."). Because no significant distinction exists between "then living children" and "persons living at the death" of a named individual as discussed in *Mackie*, the court concludes that under North Carolina law a life insurance policy benefiting "then living children" of an individual includes that individual's unborn child who is in esse and posthumously born. This interpretation is consistent with the rule that "policies of insurance should receive a liberal construction, so as to take in as many of the objects of the assured's bounty as possible." *Scull*, 132 N.C. at 30, 43 S.E. at 505.

## II. Establishment of Paternity

■ Turner further argues that she is entitled to summary judgment because the

paternity of A.H. has not and, under North Carolina law, cannot be established now that Hughes is deceased. To support this argument, Turner relies on N.C. Gen.Stat. § 49–14, which, at the time of Hughes' death, provided that no action to establish the paternity of a minor child may be maintained after the death of the putative father.[4] *See* N.C. Gen.Stat. § 49–14 (1994). Because there exists no statutorily recognized method for determining the paternity of A.H., Turner reasons that McMurran is foreclosed from offering proof that A.H. is Hughes' child.

This argument is without merit. While paternity must be established for an illegitimate child to inherit from a father who dies intestate, *see* N.C. Gen.Stat. § 29–19(b), here we are dealing not with the laws of intestate succession, but with a life insurance policy. North Carolina has no statute requiring that paternity be established for an illegitimate child to benefit from a life insurance policy. Nor does the life insurance policy involved in this case exclude illegitimate children unless paternity has been judicially established. Thus, Turner is not entitled to summary judgment on this basis.

## III. Proof of Paternity

■ McMurran contends that she is entitled to summary judgment because the evidence presented by Turner fails to raise a genuine issue of fact as to the paternity of A.H. In support of her motion, McMurran presents (1) A.H.'s birth certificate, which lists Hughes as A.H.'s father; (2)

---

4. N.C. Gen.Stat. § 49–14 has since been amended to allow a paternity suit brought after the putative father's death if the action is commenced: (1) within the time for filing a claim against the estate where a proceeding for administration of the estate is brought

within one year of the putative father's death; or (2) within one year of the putative father's death if no proceeding for administration of the estate is commenced within one year of his death. N.C. Gen.Stat. § 49–14 (2007).

evidence that A.H. is receiving Social Security benefits as a dependent of Hughes; (3) and affidavits from McMurran and other relatives of A.H. tending to establish that McMurran and Hughes were living together for a period of time before Hughes' death, that McMurran was not having sexual relations with anyone else at the time, and that there is a resemblance between A.H. and Hughes. While this evidence is sufficient to support a finding that A.H. is Hughes' child, it is not so strong as to preclude a finding to the contrary. This is especially true since McMurran waited over five years before claiming an interest in Hughes' life insurance policy and has not had DNA testing performed despite Turner's requests for such testing.

## CONCLUSION

For the foregoing reasons, the court DENIES claimant Turner's motion for summary judgment [DE # 41] and claimant McMurran's motion for summary judgment [DE # 45]. This case remains scheduled for the court's February 19, 2008, civil term. The parties shall appear for a pretrial conference in this matter at such time and place as the clerk directs.