Stephen BATEMAN, Plaintiff,

v.

**TOWN OF COLUMBIA, NORTH CAR-
OLINA, a municipal corporation and
body politic, County of Tyrrell, North
Carolina, a municipal corporation and
body politic, and Daryl Liverman, in
his official capacity as Sheriff of Tyr-
rell County, Defendants.**

No. 4:07–CV–169–H.

United States District Court,
E.D. North Carolina,
Eastern Division.

Sept. 23, 2009.

Amy L. Broughton, John A. Mauney &
Associates, P.C., Kitty Hawk, NC, for
Plaintiff.

Dan M. Hartzog, Kari R. Johnson, Cran-
fill Sumner & Hartzog, LLP, Raleigh, NC,
Christopher J. Geis, James R. Morgan, Jr.,
Womble Carlyle Sandridge & Rice, PLLC,
Winston–Salem, NC, for Defendants.

## ORDER

MALCOLM J. HOWARD, Senior District Judge.

This matter is before the court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on defendants' motions for summary judgment [DE # 37, 40]. Appropriate responses and replies have been filed, and this matter is ripe for adjudication.

### STATEMENT OF THE CASE

Plaintiff instituted this action on October 23, 2007, seeking damages for injuries sustained when he was attacked while walking along Railroad Street in Columbia, North Carolina. Plaintiff asserts claims against the Town of Columbia, North Carolina, the County of Tyrrell, North Carolina, and the Sheriff of Tyrrell County, North Carolina, for violation of his civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment, and for negligence, gross negligence and nuisance under North Carolina law. Defendants move for summary judgment as to all claims.

### STATEMENT OF THE FACTS

On January 3, 2007, plaintiff was twenty-four years old and a resident of Dare County, North Carolina. Plaintiff was working in Hyde County, North Carolina, doing home improvement work and had finished for the day around 4:00 p.m. On the way home, he and Timothy Flowers, a long-time friend of plaintiff's, stopped in Columbia, North Carolina. They decided to make an unannounced visit to the home of Santiago, an acquaintance of Flowers whom plaintiff had never met. Upon arriving, plaintiff and Flowers learned from a man known as "Candy" that Santiago had moved to a house off Railroad Street.[1] The two then proceeded to Santiago's home but Santiago was not there. Plaintiff and Flowers then walked to a nearby convenience store to get some beer to drink while they waited for Santiago. Plaintiff and Flowers were unable to buy any beer because they had no cash and the store did not accept credit cards. So, they left the store and walked back toward Santiago's.

While walking across a vacant lot on Railroad Street, plaintiff and Flowers were assaulted by a group of "eight black men," who told them that "white boys aren't allowed in this part of town." Plaintiff and Flowers attempted to fight off their attackers, and Flowers eventually broke free and called 911. Within five minutes of the 911 call, a Deputy Sheriff and probation officer (both employed by Tyrrell County) arrived at the scene, at which point the assailants fled. As a result of the attack, plaintiff suffered substantial injuries for which he seeks compensation.

### COURT'S DISCUSSION

#### I. Standard of Review

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

---

1. It is without dispute that the Railroad Street neighborhood where Santiago lived was a crime-ridden section of town. At the time relevant to this proceeding, approximately eighty percent of the crime committed in the Town of Columbia occurred within one-quarter of a mile of Railroad Street. (Daryl Liverman Dep. 16.)

U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505, but "must come forward with 'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. *Faircloth v. United States,* 837 F.Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. *Faircloth,* 837 F.Supp. at 125.

## II. Plaintiff's Claims

### A. Section 1983 Claim

▮ Plaintiff first asserts claims pursuant to 42 U.S.C. § 1983. Section 1983 imposes liability on anyone who under color of state law "subjects ... any citizen ... or other person ... to the deprivation of any rights, privileges or immunities secured by the Constitution." 42 U.S.C. § 1983. Substantive due process viola-

tions may be recoverable under § 1983. "But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The Due Process Clause was designed to prevent government abuse and oppression. *Id.* (quoting *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)). Thus, the Fourteenth Amendment prohibits the states from depriving individuals of their liberties, but it does not impose upon the states the obligation to safeguard those interests from harm by others. *Id.*

As Judge Posner explained in *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982):

> [T]here is no constitutional right to be protected by the state against being murdered by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution. The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order ... [A]s the State ... has no federal constitutional duty to provide such protection its failure to do so is not actionable under section 1983.

*Bowers,* 686 F.2d at 618.

▮ It is only where a state has taken an individual into its custody and held him against his will that the Constitution imposes upon the state a duty to assume responsibility for his safety and general well-being. *DeShaney,* 489 U.S. at 199–

200, 109 S.Ct. 998. In this circumstance, "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* at 200, 109 S.Ct. 998.

In this case, plaintiff was accosted by private individuals, not state officials, while walking down Railroad Street in Columbia, North Carolina. Because his freedom of liberty was not restrained at the time, it is not enough for plaintiff to show that defendants knew of the danger posed by the Railroad Street area and were deliberately indifferent to his need for protection. *See Pinder v. Johnson*, 54 F.3d 1169, 1175 (4th Cir.1995) (even blatant disregard of a promise to protect is insufficient to create § 1983 liability). Rather, plaintiff must show that defendants actually created the danger. *See Stevenson v. Martin County Bd. of Educ.*, 3 Fed.Appx. 25, 31 (4th Cir.2001). This he is unable to do.

"In order to create a danger, the state has to take some affirmative steps. Liability does not arise when the state stands by and does nothing in the face of danger. Failing to provide protection from danger does not implicate the state in the harm caused by third parties." *Stevenson*, 3 Fed.Appx. at 31.

Viewing the evidence in the light most favorable to plaintiff, there is simply no evidence that defendants in any way created any danger to plaintiff. While criminal activity may have been rife in the Railroad Street area, defendants did not establish or encourage any illegal activity, nor did they place plaintiff in the area. Rather, the evidence shows that plaintiff went to Railroad Street of his own accord to visit a man named "Santiago" whom he had never met. There is no evidence to suggest that defendants intended or desired to harm plaintiff or that they even knew prior to receiving the 911 call from Flowers that plaintiff was in any danger. At most, the evidence shows that defendants were aware of illegal activity in the Railroad Street area, knew of the danger to the public, and failed adequately to protect the public.

Even assuming that defendants' actions were indefensible, they simply do not rise to the level of a constitutional violation. *See Pinder*, 54 F.3d at 1175 (no § 1983 liability exists where "[t]he most that can be said of the state functionaries ... is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.") (quoting *DeShaney*, 489 U.S. at 203, 109 S.Ct. 998). Plaintiff's recourse, if any, is under state law, not § 1983. The court, therefore, GRANTS defendants' motion for summary judgment as to plaintiff's § 1983 claim.

### B. State–Law Claims

Plaintiff's remaining claims arise exclusively under North Carolina law and are before this court pursuant to 28 U.S.C. § 1367.[2] Having dismissed plaintiff's federal claim, the court declines to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over state claims if all claims over which the court had original jurisdiction

---

2. Plaintiff is a citizen of North Carolina (Compl. at 1), and diversity jurisdiction is, therefore, lacking. *See* 28 U.S.C. § 1332.

have been dismissed). Plaintiff's state-law claims are, therefore, DISMISSED WITHOUT PREJUDICE.

### CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motions for summary judgment [DE # 37, 40] as to plaintiff's § 1983 claims. The court declines to exercise supplemental jurisdiction over plaintiff's state-law claims and, therefore, DISMISSES them WITHOUT PREJUDICE.